UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Melissa Becker,<br><br>Plaintiff,<br><br>v.<br><br>Portfolio Recovery Associates, LLC,<br><br>Defendant. | Case No. 20-cv-00791 (SRN/KMM)<br><br><br>**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR STAY PROCEEDINGS** |

Darren B. Schwiebert, DBS Law LLC, 301 Fourth Avenue South, Suite 280N, Minneapolis, MN 55415, for Plaintiff.

Benjamin Kinney, Law Offices of Thomas Shiah, 247 Third Avenue South, Minneapolis, MN 55415, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion to Dismiss or, in the Alternative, Stay Proceedings [Doc. No. 9] filed by Defendant Portfolio Recovery Associates, LLC ("PRA"). PRA sued Melissa Becker in state court to collect a debt. While the state court lawsuit was pending, Becker brought this action against PRA alleging several violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. PRA moves to dismiss, arguing that Becker's FDCPA claims hinge on Becker's future success in the state court collection action, and are therefore unripe. In the alternative, PRA requests that the Court stay this litigation until the collection action concludes. For the reasons set forth below, the Court **DENIES** PRA's motion.

1

I.   BACKGROUND

Becker alleges several violations of the FDCPA arising out of PRA's attempts to collect a debt allegedly owed on Becker's "Synchrony Bank – Wal-Mart" credit card. PRA, whose principal business is the collection of debts owed to others, filed a complaint against Becker in Minnesota state court to collect the debt. (Compl. [Doc. No. 1] ¶¶ 8, 16, 20.) In PRA's state court complaint, PRA alleged that Becker owed $1563.49 on a "Synchrony Bank – Wal-Mart" credit card, and that PRA had obtained an assignment of that debt. (*Id.* ¶¶ 20, 22.) According to Becker's federal complaint ("the Complaint"), Becker did not receive any written communications from PRA prior to being served with the state court summons and complaint; Becker did not open a credit card with "Synchrony Bank – Wal-Mart," an entity that Becker alleges does not exist; Becker does not owe the balance on that card; and PRA never received an assignment of the credit card debt. (*Id.* ¶¶ 23–26.)

Moreover, Becker alleges that PRA's conduct in attempting to collect the Synchrony Bank debt violated restrictions placed on PRA following enforcement actions by federal and state government entities. Specifically, in 2015, PRA and the United States Consumer Financial Protection Bureau ("CFPB") entered a consent order requiring PRA to obtain certain documentation and provide certain information to debtors prior to bringing enforcement actions. (*Id.* ¶¶ 32–40.) And in 2019, PRA entered an "Assurance of Discontinuance" with the Massachusetts Attorney General, which contained similar restrictions as the CFPB consent order. (*Id.* ¶¶ 42–43.) Becker alleges that PRA's conduct in the state court collection action violates these restrictions, and therefore violates the FDCPA.

Finally, Becker alleges that Minnesota law requires PRA to obtain a license prior to collecting consumer debts in Minnesota, and that PRA does not have such a license. (*Id.* ¶¶ 46–51.) She also alleges that PRA's summons caused her confusion by directing her to serve her answer at a North Dakota Post Office Box, in violation of Minnesota's rules for service of process. (*Id.* ¶¶ 28–30, 56.)

Based on these allegations, Becker alleges eight separate violations of the FDCPA:

1. PRA violated 15 U.S.C. § 1692f(1) by filing a summary judgment motion seeking to collect $120 for service fees in the state court action although PRA's affidavit of service indicates that the cost was only $40.
2. PRA violated § 1692f(1) by serving a complaint on Becker without a valid assignment of the alleged debt.
3. PRA separately violated § 1692f(1) by filing the complaint without a valid assignment.
4. In violation of § 1692e(2), (5), and (10), PRA made false statements regarding the amount or legal status of the debt, including by falsely stating that Becker owed $1563.49 for a "Synchrony Bank – Wal-Mart" account.
5. PRA violated § 1692f(1) by falsely stating that Becker must serve her answer at a North Dakota Post Office Box in violation of Minnesota Rule of Civil Procedure 4.01.
6. PRA's conduct in bringing the lawsuit violates the CFPB consent order, and therefore violates § 1692f(1).
7. PRA's conduct similarly violates the Assurance of Discontinuance, and therefore violates § 1692f(1).
8. By engaging in collection activity without a license to collect debt in Minnesota, PRA violated § 1692f(1).

(*Id.* ¶¶ 53–60.)

Following the filing of Becker's federal Complaint, PRA filed a motion to dismiss or stay Becker's FDCPA claims. (Def.'s Rule 12(b)(6) Mot. Dismiss or Stay Proceedings [Doc. No. 9].) Meanwhile, the state court denied PRA's motion for summary judgment in the collection action, and that case is proceeding toward trial. (Letter to District Judge [Doc. No. 19].)

3

## II. DISCUSSION

### A. Standard of Review

Although styled as a Federal Rule of Civil Procedure 12(b)(6) motion, PRA's motion—which argues that Becker's Complaint is unripe—is at heart a Rule 12(b)(1) motion. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) ("Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss."). Where the defendant argues that the facts alleged in the complaint fail to establish subject-matter jurisdiction—as PRA does here—the plaintiff is afforded similar safeguards as in a Rule 12(b)(6) motion. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Namely, the court must "accept as true all factual allegations in the complaint, giving no effect to conclusory allegations of law," and determine whether the plaintiff's alleged facts "affirmatively and plausibly suggest" that jurisdiction exists. *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007). The court's review is limited to the face of the pleadings. *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015).

### B. PRA's Motion to Dismiss

PRA argues that Becker's FDCPA claim should be dismissed because it is unripe. Whether a claim is ripe depends on "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Pub. Water Supply Dist. No. 10 of Cass Cty. v. City of Peculiar*, 345 F.3d 570, 572–73 (8th Cir. 2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). A plaintiff must satisfy both elements "at least to a minimal degree." *Id.* (citing *Nebraska Pub. Power Dist. v. MidAmerican Energy*

4

*Co.*, 234 F.3d 1032, 1039 (8th Cir. 2000)). Under the "fitness for judicial decision" prong of the analysis, whether a case is fit "depends on whether it would benefit from further factual development." *Id.* at 573. A case "is more likely to be ripe if it poses a purely legal question and is not contingent on future possibilities." *Id.* Under the hardship prong, the complaint must allege that the plaintiff "has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged" conduct. *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

Here, PRA argues that Becker's FDCPA claims are unfit for judicial decision because they mirror the defenses Becker raised in the state court collection action, and the merits of Becker's FDCPA claims therefore hinge on the future resolution of the state court case. For example, Becker's second and third claims allege that PRA violated the FDCPA by serving and filing a complaint without obtaining a valid assignment of Becker's alleged debt. (Compl. ¶ 54.) These claims, PRA argues, depend on a future state court ruling finding no valid assignment. Moreover, PRA argued at the time it filed its memoranda that withholding court consideration of Becker's FDCPA claims would not cause any hardship because the state court had scheduled a hearing on a dispositive motion in the collection case.

PRA's ripeness argument is unpersuasive. For each of Becker's eight claimed FDCPA violations, the conduct allegedly violating the FDCPA is not a speculative, future possibility; it has already occurred. Taking claims two and three as representative examples again, PRA has already served and filed its complaint (allegedly) without a valid assignment. Although the state court's ruling in the collection action could affect the merits

5

of Becker's FDCPA claims under preclusion principles, Becker's claims do not *depend* on the resolution of the state court case. That is, Becker does not need to obtain a state court ruling that PRA lacked a valid assignment prior to pursuing her second and third FDCPA claims. The same reasoning applies to the rest of Becker's eight claims. While the merits of Becker's FDCPA claims overlap with some of Becker's defenses in the state court litigation (e.g., the validity of PRA's assignment), that overlap does not render Becker's FDCPA claims unfit for judicial decision.

Becker satisfies the hardship prong as well. The hardship prong requires a plaintiff to allege that she has suffered harm, or imminently will suffer harm, as a result of the defendant's conduct. *See Pub. Water Supply Dist. No. 10 of Cass Cty.*, 345 F.3d at 573. Because Becker alleges that PRA's conduct in the state court collection action has already violated her federally protected rights, Becker satisfies the hardship prong. Moreover, withholding this Court's consideration of Becker's FDCPA claims until resolution of the state court litigation could significantly delay the litigation of her federal claims. PRA's argument to the contrary rested on the fact that, at the time of briefing, a dispositive motion was scheduled in the state court litigation. That motion has since been denied, and the state court litigation is still ongoing.

In short, while the overlap between Becker's state court defenses and federal FDCPA claims is relevant to whether the Court should stay this case, that overlap does not render Becker's FDCPA claims unripe. Accordingly, the Court denies PRA's motion to dismiss.

### C.     PRA's Alternative Request to Stay

PRA requests in the alternative that the Court stay this case until the state court collection action has concluded. PRA argues that the Court should stay this case as an exercise of its inherent, discretionary power to manage its docket. Further, PRA asserts that the Court must stay this case under the *Rooker-Feldman* doctrine, and as a matter of res judicata and collateral estoppel. Finally, PRA's arguments implicate another doctrine: *Colorado River* abstention. Because none of these doctrines apply here, the Court denies PRA's request.

### 1.     The Court's Inherent Power to Stay

The Court declines to stay this litigation as an exercise of its inherent power to manage its docket. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Cottrell v. Duke*, 737 F.3d 1238, 1248 (8th Cir. 2013) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248 (1936)). But considerations of fairness to the opposing party mandate a presumption in favor of denying a motion to stay. *Rumble v. Fairview Health Servs.*, No. 14–cv–2037 (SRN/FLN), 2017 WL 401940, at *2 (D. Minn. Jan. 30, 2017). The party seeking a stay has the burden of overcoming this presumption, and to do so must demonstrate a "specific hardship or inequity if he or she is required to go forward." *Daywitt v. State of Minnesota*, No. 14-CV-4526 (WMW/LIB), 2016 WL 3004626, at *5 (D. Minn. May 24, 2016) (quoting *Jones v. Clinton*, 72 F.3d 1354, 1364 (8th Cir. 1996) (Beam, J., concurring)).

PRA has not overcome the presumption against issuing a stay. PRA argues that a stay is appropriate because this case and the state court collection action involve similar issues (e.g., the validity of PRA's assignment). Thus, PRA highlights concerns of judicial efficiency, the risk of inconsistent rulings, and the costs of concurrent litigation. To be sure, the outcome of the state court action might affect Becker's FDCPA claims. For example, to the extent the state court finds PRA's assignment valid, issue preclusion may well bar Becker from arguing that PRA violated the FDCPA by filing and serving a complaint without a valid assignment. Nonetheless, the factual and legal overlap between the cases—and the concerns of judicial economy and cost PRA invokes—do not rise to the level of hardship or inequity required to overcome the presumption against a stay. In fact, the Supreme Court, recognizing the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," has observed that "[g]enerally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . .'" *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)).[1] Thus, the fact that there is

---

[1] PRA suggests that *Progressive Preferred Insurance Co. v. Reagor*, 189 F. Supp. 3d 850, 852 (D. Minn. 2016), endorsed the opposite rule: that federal courts typically dismiss or stay an action where a case involving similar questions is pending in state court. (*See* Def.'s Reply Mem. [Doc. No. 16] at 1 (citing *Progressive Preferred* for the proposition that "where parallel state and federal cases are pending, and the federal case involves questions of state law, 'federal courts typically dismiss or stay the federal action due to concerns of federalism and judicial economy.'").) But PRA omits essential language from *Progressive Preferred*. The court, facing a federal declaratory judgment action between insurance companies while parallel state litigation was pending, stated: "where parallel state and federal cases are pending, and the federal case involves questions of state

8

pending litigation concerning overlapping issues in state court, by itself, is insufficient to overcome the presumption against a stay.

### 2.     *Rooker-Feldman* Doctrine

Moreover, the Court is not required to stay this case under the *Rooker-Feldman* doctrine. Under *Rooker-Feldman*, a federal court cannot exercise jurisdiction over "actions seeking review of, or relief from, state court judgments." *Hageman v. Barton*, 817 F.3d 611, 614 (8th Cir. 2016) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291–93 (2005)). In addition, the doctrine withholds federal jurisdiction over claims that are "inextricably intertwined" with claims adjudicated in state court. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 483 (1983). PRA argues that *Rooker-Feldman* applies here because Becker's FDCPA claims are contingent on Becker's success in the underlying collection action. Thus, in PRA's view, adjudicating Becker's FDCPA claims constitutes an intervention into the state court dispute. (*See* Def.'s Reply Mem. [Doc. No. 16] at 1, 5.) But *Rooker-Feldman* applies only where the plaintiff attempts to obtain, directly or indirectly, federal review of final state court judgments. *See Hageman*, 817 F.3d at 615 ("[T]he doctrine only applies to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced *and inviting district court review and rejection of those judgments.*'" (quoting

---

law **and a request for a declaratory judgment**, federal courts typically dismiss or stay the federal action due to concerns of federalism and judicial economy." *Progressive Preferred*, 189 F. Supp. 3d at 852 (emphasis added). Plainly, this preference for a stay applies to declaratory judgment actions, which this case is not.

9

*Banks v. Slay*, 789 F.3d 919, 922 (8th Cir. 2015)) (emphasis in original)). Here, there is no state court judgment in the collection action, and *Rooker-Feldman* does not apply.[2]

### 3. Res Judicata and Collateral Estoppel

Likewise, res judicata and collateral estoppel do not require a stay. PRA asserts that res judicata and collateral estoppel bar Becker from "simply argu[ing] the same issues in a different forum."[3] (Def.'s Reply Mem. at 6.) As with *Rooker-Feldman*, res judicata and collateral estoppel apply only after a final judgment on the merits. *See Hauschildt v. Beckingham*, 686 N.W.2d 829, 837, 840 (Minn. 2004). The state court litigation has not produced a final judgment. Accordingly, neither res judicata nor collateral estoppel bar Becker's claims at this stage.

### 4. *Colorado River* Abstention

Finally, PRA's arguments implicate another doctrine: the *Colorado River* abstention doctrine. Although PRA did not explicitly refer to *Colorado River* in its memoranda, it is

---

[2] *See Mason v. Messerli & Kramer, P.A.*, No. CIV.03-3251 (PAM/RLE), 2004 WL 898273, at *2 (D. Minn. Apr. 14, 2004) (holding that *Rooker-Feldman* did not apply where a FDCPA plaintiff's state court claims were still pending).

[3] The only authority PRA cites is *Heroux v. Callidus Portfolio Management, Inc.*, No. CV 17-5132 (DSD/HB), 2018 WL 2018069 (D. Minn. May 1, 2018). There, a debt collector had obtained a state court judgment against a debtor after the debtor failed to respond to discovery requests and the debt collector's summary judgment motion. *Id.* at *1. The debtor then sued in federal court, arguing that the debt collector had violated the FDCPA during the discovery and collection process. *Id.* Because the state court judgment did not determine any of the issues raised in the FDCPA claims, the court concluded that neither res judicata nor collateral estoppel applied. *Id.* at *3. Unlike in *Heroux*, the state court litigation between Becker and PRA has not produced a final judgment, rendering res judicata and collateral estoppel inapplicable.

this doctrine—not *Rooker-Feldman*—that addresses abstention where concurrent state and federal litigation involves overlapping issues. *Colorado River* permits a federal court to "decline to exercise jurisdiction over cases where 'parallel' state court litigation is pending." *Spectra Commc'ns Grp., LLC v. City of Cameron*, 806 F.3d 1113, 1121 (8th Cir. 2015). A district court may stay a case pursuant to *Colorado River* "only 'when [1] parallel state and federal actions exist and [2] exceptional circumstances warrant abstention.'" *Cottrell*, 737 F.3d at 1244–45 (alterations in original) (quoting *Fru-Con Constr. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 534 (8th Cir. 2009)). In applying *Colorado River*, federal courts must be mindful of their "'virtually unflagging obligation . . . to exercise the jurisdiction given them,' which 'does not evaporate simply because there is a pending state court action involving the same subject matter.'" *Spectra Commc'ns Grp., LLC*, 806 F.3d at 1121 (internal citation omitted) (first quoting *Colorado River*, 424 U.S. at 817; then *Federated Rural Elec. Ins. Corp. v. Ark. Elec. Coops., Inc.*, 48 F.3d 294, 297 (8th Cir. 1995)). Consistent with that obligation, "abstention is appropriate only in 'exceptional circumstances' where the surrender of federal jurisdiction is supported by 'the clearest of justifications.'" *Id.* at 1121 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25–26 (1983)).

Under the first prong of the *Colorado River* analysis, concurrent state and federal actions are "parallel" if "a substantial similarity . . . exist[s] between the state and federal proceedings, which . . . occurs when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." *Cottrell*, 737 F.3d at 1245 (quoting *Fru-Con Constr. Corp.*, 574 F.3d at 534). If there is any doubt

regarding whether state and federal actions are parallel, the court cannot refuse jurisdiction. *Id.* Under *Colorado River's* second prong, courts examine six factors to determine whether exceptional circumstances exist.[4] These factors are not a "mechanical checklist," and should instead be weighed "in a pragmatic, flexible manner with a view to the realities of the case at hand." *Spectra Commc'ns Grp., LLC*, 806 F.3d at 1121 (quoting *Moses H. Cone*, 460 U.S. at 16).

*Colorado River* does not apply here because the state and federal lawsuits are not "parallel." Although Becker's defenses in the state court collection action overlap with her federal FDCPA claims, there is not a "substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." *Cottrell*, 737 F.3d at 1245; *cf. Acosta v. James A. Gustino, P.A.*, 478 F. App'x 620 (11th Cir. 2012). In *Acosta*, the Eleventh Circuit held that the district court abused its discretion in applying *Colorado River* because a debtor's FDCPA claims were not "parallel" to a state court collection action. There, the debtor owed homeowners' association fees, and the association sued in state

---

[4] The six factors are:

> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

*Spectra Commc'ns Grp., LLC*, 806 F.3d at 1121 (quoting *Federated Rural*, 48 F.3d at 297).

court to either foreclose a lien on the debtor's property or to recover a money judgment. *Id.* at 620. The debtor then sued the association's law firm in federal court, alleging violations of the FDCPA. *Id.* The Eleventh Circuit reasoned that the actions were not parallel because resolution of the state action against the debtor would not necessarily eliminate the debtor's FDCPA claims; rather, "the key to the federal case is not only whether the debt was enforceable but also whether the [law firm's] conduct when collecting that debt complied with the Fair Debt Collection Practices Act." *Id.* at 622. Similarly, the key to Becker's FDCPA claims is not just whether the debt is enforceable, but whether PRA violated the FDCPA in its pursuit of that debt. Thus, there is not a substantial likelihood that the state court collection action will fully dispose of Becker's FDCPA claims, and the Court cannot refuse to exercise its jurisdiction. *See Cottrell*, 737 F.3d at 1245.

For the foregoing reasons, the Court denies PRA's request to stay these proceedings.

### III. CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Rule 12(b)(6) Motion to Dismiss or, in the Alternative, Stay Proceedings [Doc. No. 9] is **DENIED**.

**IT IS SO ORDERED.**

Dated: September 8, 2020                        s/Susan Richard Nelson
                                                SUSAN RICHARD NELSON
                                                United States District Judge

13